IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:13-cv-02173-PAB-NYW

MIRIAM WHITE

        Plaintiff,

v

DEERE & COMPANY,
JOHN DEERE LIMITED,
JOHN DOE 1,
JOHN DOE 2,
JOHN DOE 3,
JOHN DOE 4,
JOHN DOE 5,

        Defendants.

---

# ORDER

---

Magistrate Judge Nina Y. Wang

       This matter comes before the court on four motions:  (1) Plaintiff Miriam White's ("Plaintiff" or "Ms. White") Motion to Compel Complete Answers to Interrogatories [#47] (Plaintiff's "Motion to Compel Interrogatories"), filed by Plaintiff on January 22, 2015, (2) named Defendants Deere & Company and John Deere Limited's (collectively, "Defendants" or "Deere") Motion for Protective Order [#51] to limit the scope of Plaintiff's Fed. R. Civ. P. 30(b)(6) deposition, filed on February 4, 2015; (3) Plaintiff's Motion to Compel Responses to Requests for Production ("Plaintiff's Motion to Compel Requests for Production") filed on

February 24, 2015 [#59];[1] and (4) Defendants' Motion to Compel Production of Documents Responsive to Request No. 8 [#74].  These motions were referred to the Magistrate Judge pursuant to the Order of Reference dated August 27, 2013 [#9] and the respective memoranda dated January 22, 2015, February 4, 2015, February 24, 2015, and March 17, 2015.  [#48, #52, #60, #75].

The court has carefully considered the motions and related briefing, the arguments of counsel at the March 3, 2015 hearing on the parties' motions as well as during the informal discovery conference on March 16, 2015, and the applicable case law.  Accordingly, for the reasons stated on the record that are further explained as follows, the court ORDERS:

(1) Plaintiff's Motion to Compel Interrogatory Responses be GRANTED IN PART pursuant to the terms of this Order with respect to Plaintiff's interrogatories 7, 8, and 9, and be otherwise DENIED;

(2) Defendants' Motion for Protective Order be GRANTED IN PART pursuant to the terms of this Order with respect to topics 1, 5, 6, and 8 of Plaintiff's 30(b)(6) deposition notice, and be otherwise DENIED;

(3) Plaintiff's Motion to Compel Requests for Production be GRANTED IN PART with respect to Request Nos. 2, 5, 12, 13, 14, 15, 16, 17, 21, 29, and  be otherwise DENIED; and

(4) Defendants' Motion to Compel Response to Request for Production No. 8 be GRANTED.

---

[1] By this Order, given the arguments set forth in the various discovery motions, the court determines that a Reply to this motion would not materially assist in its resolution and the court will proceed in resolving that motion now.

## BACKGROUND

Because of the relevance to the discovery disputes at issue, the court will discuss Ms. White's allegations as set forth in her Complaint filed on August 14, 2013 [#3-1] and the particular types of equipment involved in the underlying incident. Ms. White alleges that in the summer of 2002, she purchased a John Deere farm tractor and front end loader, and accompanying material handling attachments. [#3-1, at ¶ 15]. In the summer of 2011, the Plaintiff used this equipment to move square bales of hay. [*Id.* at ¶¶ 40-41]. In the course of doing so, a square bale of hay allegedly rolled over the material handling attachment and struck Ms. White in the head, resulting in serious injuries. [*Id.* at ¶ 42]. The Complaint includes six causes of action arising out the "fall back" accident, all premised on defective design and/or failure to properly warn, including a claim for strict product liability. [#3-1].

In the Complaint, Ms. White does not specify the model number of the tractor, front end loader, or accompanying material handling attachments involved in the accident. [#3-1]. The Parties' other papers define the tractor as the Model 4600 Tractor, the Model 460 Loader ("460 Loader"), and pallet fork attachments to the 460 Loader. [#51, at 2-3]. Plaintiff does not dispute Deere's assertion that at the time of the accident, she was using these pieces of equipment to move a large square bale of hay weighing about 1,500 pounds on the pallet fork without securing the hay bale to the fork. [#51-1, at 2].

The pending motions arise from the Parties' multiple disputes over the appropriate scope of discovery in this matter.

## I.      Plaintiff's First Set of Interrogatories and Motion to Compel.

Ms. White's first set of fifteen interrogatory requests upon Defendants seek a broad range of information regarding the design, function, and accidents involving John Deere tractors,

forklift material handling attachment, front-end loader, and bucket level indicators.  [#47, at 1 & #47-1].  On July 15, 2014, Defendants served their objections and responses to Plaintiff's first set of interrogatory requests, in many instances objecting to the propounded discovery requests due to their breadth and burden.  [#47-1].  On December 2, 2014, Plaintiff's counsel sent a letter to counsel for Defendants, clarifying the scope of a number of interrogatories to which Plaintiff believed Defendants had not adequately responded, focusing on Interrogatory Nos. 3, 4, 7, 8, 9, 10, 11, 13, 14, 15. [#47-2].  In response by electronic mail dated December 9, 2014, counsel for Defendants agreed generally to supplement a number of its responses by December 23, 2014, and again in mid-January if additional responsive information became available.  [#47-3].  On December 23, 2014, Defendants served supplemental responses to a number of Plaintiff's interrogatories, including Interrogatory Nos. 3, 4, 7, 8, 9, 10, and 11.  [#47-4].  In doing so, Deere limited its responses to the specific equipment used by Ms. White, *i.e.*, the 4600 Tractor, the 460 Loader, and pallet forks attached to the 460 Loader.  [*Id.* at 4, 7, 8].

On Tuesday, January 13, 2015 and January 16, 2015, the parties again telephonically met-and-conferred regarding the adequacy of Defendants responses to a number of Plaintiff's interrogatories, but were unable to reach agreement.  [#55, at 3].  On January 22, 2015, Ms. White filed the instant Motion to Compel Interrogatories, seeking further verified responses to Interrogatory Nos. 3, 4, 7, 8, 9, 10, 11, 13, 14, 15.  [#47].  As part of the Motion to Compel, Ms. White did not attach any statement from its expert, Tom Berry.  Rather, Plaintiff relied upon attorney arguments that all Deere equipment should be subject to her discovery requests.

On January 23, 2015, Defendants served additional supplemental responses to Plaintiff's Interrogatories Nos. 10-11.  [#55, at 2].  Deere then formally responded to the Motion to Compel Interrogatories on February 12, 2015.  In its Response, Deere argues that the Motion is moot

with respect to Interrogatory Nos. 10 and 11 (which were supplemented the day after the Motion to Compel Interrogatories was filed), that Interrogatory No. 7 had been fully answered, and that responses to Interrogatory Nos. 3, 4, 8, and 9 "have been or will be supplemented." [#55, at 1-4]. For instance, Deere argued that based on the Parties' conference on January 16, 2015, Deere properly limited its answers to the specific 460 Loader and 4600 tractor involved in Ms. White's accident. [*Id.* at 2-3]. Nevertheless, at the hearing, it was clear that disputes regarding these interrogatories remained between the Parties, including but not limited to what universe of Deere equipment would be subject to discovery.

## II.    Plaintiff's 30(b)(6) Deposition Notice and Defendants' Motion for Protective Order.

On or around December 17, 2014, Plaintiff sent a fifteen topic draft 30(b)(6) deposition notice as to Defendants to counsel for Defendants. [#51 at 2]. On January 12, 2015, Defendants shared draft objections with Plaintiff. [*Id.*] Before and subsequent to January 12, 2015, counsel for Defendants and Plaintiff met-and-conferred as to the scope of the noticed topics (which extended by their terms to tractors and equipment different from but potentially similar to the tractor and equipment involved in Plaintiff's alleged "fall back" accident), and Defendants objections thereto. [*Id.*] In an attempt to reach resolution, Defendants "offered to permit examination of its corporate representative on topics beyond the tractor involved in the accident, and to provide information about not only tractors in the same model class as the 4600 Tractor (subcompact utility tractors), but also those one size larger (the 4700 tractor) and one size smaller (the 4500 Tractor)." [*Id.*] Plaintiff declined to narrow the scope of the contemplated 30(b)(6) topics, and, on January 30, 2015, served a finalized Fed. Rule Civ. P. 30(b)(6) notice substantively identical to Plaintiff's December 2014 draft. [*Id.*]

Deere now moves for a Protective Order, identifying six deposition topics at issue:  Topics 1, 4, 5, 6, 7, and 8.  [#51].  Deere requests that the court limit the scope of the deposition of its corporate representative designated under Rule 30(b)(6) of the Federal Rules of Civil Procedure to (1) the specific model of tractor involved in Ms. White's accident, *i.e.*, the 4600 model, and the immediately larger and smaller modes (models 4700 and 4500, respectively) sold by Deere; (2) the specific material handling attachment involved in the Plaintiff's accident, the 460 Loader with pallet fork, rather than any other different material handling attachments that could be used with the 460 Loader, such as buckets or bale spears; and (3) accidents involving a load similar to that involved in Plaintiff's accident, *i.e.*, a square hay bale unsecured to the pallet fork, rather than accidents involving "loads of any kind."  [*Id.* at 3-4].

## III.    Plaintiff's Motion to Compel Requests for Production

Ms. White is also dissatisfied with Deere's responses to her First Set of Requests for Production.  [#59].  She argues that Deere's objections to her Requests for Production Nos. 1, 2, 5, 6, 7, 14, 15, 17, 19, 20, 22, 23, 24, 26, 27, and 28 are improper, because Deere attempts to limit discovery only to the 460 Loader involved in her accident.  [# 59, at 4-5].  Ms. White also argues that Deere's objections to certain terms used in the Requests for Production, specifically Requests Nos. 1, 2, 3, 5, 6, 7, 9, 10, 11, 29, and 30, are simply excuses for Deere's declination to properly search for and produce responsive documents.  [*Id.* at 5-7].  Ms. White also contends that Deere's general objection based on privilege on Requests No. 11, 18, 20, and 23, is improper.  [*Id.* at 7-8].  Ms. White also asserts that Deere's responses to Requests for Production Nos. 1, 3, 4, 6-11, 13-19, 22, 24, 26 and 28 that it has not located certain documents are inaccurate, based on documents that she has been able to obtain through other sources.  [*Id.* at 8-9].  Ms. White also moves for sanctions for the costs of having to move to compel.

In support of her Motion to Compel Requests for Production of Documents, Ms. White submitted a number of documents that counsel for Ms. White received from Mr. Berry. [#63]. Included in the exhibits were documents purportedly published by Deere, excerpts of written discovery responses from other cases involving Deere, and excerpts from depositions taken in other cases involving Deere. [*Id.*] Except for the deposition transcripts arising from this case, it does not appear that any of the documents are specific to the 4600 Tractor, 460 Loader, or the pallet forks involved in Ms. White's accident. [*Id.*] Some of the documents date from the 1970's. [*Id.*] Ms. White did not, however, offer any declaration by Mr. Berry to explain the significance of the documents.

On March 16, 2015, Deere filed a Response to the Motion to Compel, arguing that its objections were proper because, *inter alia*, "Plaintiff's requests are essentially that Deere search for and produce documents developed during the design and production of hundreds of other products over scores of decades." [#72, at 2]. Deere also defended its objections to Ms. White's use of terms such as "knowledge," "all," and "misuse" – contending that those terms are either inherently overbroad (such as "all") or subjective. In addition, Defendants also argue that Deere's general objections with respect to privileged documents, and that Deere's statement that some documents could not be located are proper. [*Id.* at 5-6]. Finally, Deere addresses Ms. White's specific complaints regarding particular requests, including Requests for Production Nos. 2, 5, 12, 13, 14, 15, 16, 17, 21, 29, and 30. [#72 at 7-10].

## IV.   Defendants' Motion to Compel

During the week of March 9, 2015, pursuant to the court's informal discovery procedure, counsel for the Parties alerted the court that there was an additional discovery dispute. As part of the oral argument held on March 3, 2015, and in support of its Motion to Compel Requests for

7

Production, Ms. White has relied on certain documents provided to her counsel by an expert witness, Tom Berry. *See e.g.*, [#63]. Counsel for Deere requested production of all documents in possession of Ms. White's counsel, and Ms. White declined to produce them, citing the work product doctrine, and arguing that the request was premature because she had not yet determined which documents would be used by the expert in his opinion for this action.

In anticipation of the hearing, Ms. White filed a paper entitled "Response to Motion Hearing, Plaintiff's Opposition to Defendants' Oral Rule 37 Motion Re Production of John Deere Documents" on March 15, 2015 [#70]. As part of this submission, Ms. White, for the first time, offered a Declaration from Mr. Berry, in which he stated "Deere & Co.'s knowledge of 'fall back' from front loaders has never been tied to a model no. of the tractor or of the front-end loader involved." [#70-1, at 1]. He further states that "It has never been an issue of what horsepower or what model the tractor is and the loader is with respect to the need for protective devices. The issue is that the design of the front end loader allows objects to fall back from the loader attachment, down the ramped loader arms and onto the operator area. This design creates a hazard with a foreseeable high risk of serious injury or death." [*Id.* at 2]. While the declaration refers to a number of exhibits, those exhibits were filed the following day as part of a separate docket entry. [#71].

At the hearing, Plaintiff's counsel argued that it was not required to produce the documents in its possession, because such documents were provided by Mr. Berry and were therefore, covered by the work product doctrine. Deere argued that the documents were historic documents that were not entitled to any type of privilege. At the conclusion of the hearing, the court directed Deere to file a written motion [#74] and Ms. White to file a written response in an expedited fashion [#75]. In her response to the Defendants' Motion to Compel Response to

Request for Production No. 8, Ms. White agreed "to produce responses to Defendant's Request to produce no. '8'" [*id.* at ¶ 10].   However, Plaintiff takes issue with Defendants' position that they will object to the use of such documents in the Rule 30(b)(6) deposition for Deere that is upcoming on April 9, 2015.[2]   [*Id.*].

## ANALYSIS

## I.      **Plaintiffs' Motion to Compel Interrogatories**

Plaintiff moves to compel full and complete verified substantive responses to Plaintiff's Interrogatories Nos. 3, 4, 7, 8, 9, 10, and 11, and to strike Defendants' objections thereto.   In moving to compel further answers, the burden is on Ms. White to prove that Defendants' answers are incomplete.   *Bayview Loan Servicing, LLC v. Boland*, 259 F.R.D. 516, 518 (D. Colo. 2009) (citing *Daiflon, Inc. v. Allied Chemical Corp.*, 534 F.2d 221 (10th Cir. 1976) ("appellees had the burden of proving the answer to their interrogatory was indeed incomplete").

### A.  **Legal Standard**

The general test of discoverability is whether the materials or information sought by a discovery request "is relevant to any party's claim or defense."   Fed. R. Civ. P. 26(b)(1).   This is a broad standard meant to allow the parties to discover the information necessary to prove or

---

[2] In Plaintiff's Response to Defendants' Motion to Compel, she offers additional support for her prior position that discovery should encompass all Deere tractors and all accessories that are attached to the front of such tractors, including an additional declaration from Mr. Berry. [#76 at 15-17].   In essence, these arguments and exhibits, as well as the ones filed in anticipation of the oral hearing [#70, #71] amount to supplemental replies to Plaintiff's discovery motions, not responses to Deere's Motion to Compel.   Ms. White did not seek leave, and this court did not grant leave, for supplemental replies to be filed to those motions.   Neither the Federal Rules of Civil Procedure nor the Local Rules for the District of Colorado provide for automatic supplemental replies.   While it will not strike the statements due to the omnibus nature of the discovery hearings and this order, the court reminds the Parties to adhere to the applicable Rules with respect to filing going forward, and that failure to do so may lead to the striking of such arguments or papers.   *See e.g., Lazarov v. Kimmel*, 2011 WL 165180, at *4-5 (D. Colo. Jan. 16, 2011) (J. Arguello).

disprove their cases. *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995). Upon a showing of "good cause" by the proponent of discovery, an even broader standard of "any matter relevant to the subject matter involved in the action" may be applied. *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1188 (10th Cir. 2009). However, when the relevance of a discovery request is not apparent on the face of the request itself, the proponent of discovery bears the burden of making an initial, rebuttable showing of relevance. *Thompson v. Jiffy Lube Int'l, Inc.*, No. 05–1203–WEB, 2007 WL 608343, at *8 n. 20 (D. Kan. Feb. 22, 2007).

Nevertheless, the proper scope of discovery is always bounded by the principles of proportionality. Fed. R. Civ. P. 26(b)(2)(C); *see also Qwest Commc'ns Int'l v. Worldquest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003). Indeed, Rule 26(b)(2)(C) allows a court to limit discovery on motion or on its own if it determines that: (1) the discovery sought is unreasonably cumulative or duplicative, or may be obtained from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (3) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues. Fed. R. Civ. P. 26(a)(2)(C).

In products liability cases in this circuit addressing the discoverability of other products and incidents potentially similar to those at issue in the parties' litigation, courts have required a showing that "the other accidents or products are similar enough that discovery concerning those incidents is reasonably calculated to lead to the uncovering of substantially similar occurrences." *A.H. ex rel. Hadjih v. Evenflo Co.*, Inc., No. 10–cv–02435–MSK–KMT, 2011 WL 3684807 at *4 (D. Colo. Aug. 23, 2011).

At the core of these disputes, the court considers whether Plaintiff has established "substantial similarity" between evidence she seeks and the type of accident as well as the equipment involved in such accident.  In reviewing the Parties' submissions, the court has considered Mr. Berry's statements that fall back accidents are not necessarily tied to a type of tractor and that "[t]he issue is that the ***design of the front end loader*** allows objects to fall back from the loader attachment, down the ramped loader arms and onto the operator area," [#76 at 9 (emphasis added)].  But then, Mr. Berry does not even attempt to draw parallels between the particular design of the 460 Loader at issue to other specific pieces of machinery that share the same characteristics.  He does not identify equipment similar to the 460 Loader or pallet forks involved in the incident, by hydraulics, or dimension, or otherwise.  [*Id.*]  He also does not identify any similar tractors that share the same design (such as identical or very similar component parts), as the 4600 Tractor.  [#76].  Instead, he simply states, "that nothing in the design of the 460 [sic] tractor precludes similar behavior possibility." [*Id.* at 15.]  That statement may be true, but standing alone, it is insufficient to affirmatively establish that there is a reasonable likelihood that there is "substantial similarity" between the products and accident at issue and every single other fall back accident ever experienced by any person, so long as Deere equipment was used.  *See Gonzales v. Goodyear Tire & Rubber Co.*, 2006 WL 7290047 (D.N.M. Aug. 10, 2006).  The court simply cannot accept Mr. Berry's broad brush statements of similarity, without factual support.

**B.  Response to Plaintiff's Interrogatory No. 3.**

Interrogatory No. 3 seeks information pertaining to the design history of the John Deere "forklift material handling attachment, front-end loader, and bucket level indicator that the Plaintiff purchased." [#47-4, at 2].  Defendants' original response to this interrogatory informed

Plaintiff that the "460 Front Loader was first manufactured in 1998 and is designed for use on the 4500, 4510, 4600, 4610, 4700, 4710 tractors." [*Id.*] Defendants' first supplemental response suggested that Defendants have not yet been able to obtain additional information *inter alia* because the products at issue were made over a decade ago, and that key employees with potential knowledge of the products have since departed, complicating efforts to date to obtain responsive documents and information. [*Id.*]

In seeking to compel a further a further response, Plaintiff contends that Defendants have not "den[ied] there exist engineering files with updates, or current engineers or staff to pull the files and answer the simple question of whether product changes or improvements have been made" to the particular front-end loader, material handling attachment, and bucket level indicator purchased by Plaintiff. [#47 at 6]. The court reads Defendants' responses to deny that it has been able to obtain reasonably available responsive information or documents beyond what has already been produced to Plaintiff. Because Plaintiff has failed to provide any evidence from which the court could fairly infer that Defendants' original and supplemental responses are incomplete based on information and materials presently reasonably available to Defendants, the court declines to order a further response at this time based on the record before it. The court, however, does note that Deere has a continuing obligation of production under Rule 26(e), to the extent other responsive materials are found.

### C. Response to Plaintiff's Interrogatory No. 4.

Plaintiff's Interrogatory No. 4 calls for Defendants to "Identify when, why, and how either of the Defendants became aware that a user/operator/owner of a Deere front-end loader and tractor could be injured or killed if the user/operator/owner used the Deere tractor and front-end loader with a Deere pallet forks material handling attachment to move, lift, and/or stack

square hay bales?"  [#47-4 at 3].  In subsequent correspondence conferring on the contemplated scope of the request, Plaintiff's counsel represented that "Plaintiff will agree that the question should be limited to the issue of injury or death while lifting a large square ball or large load with forks on the 460 Loader, and with the John Deere backstop attachment, as sold with the unit." [#47-2 at 3].  Defendants' December 23, 2014 supplemental response informed Plaintiff that "As to information arising from notice of injuries or deaths while lifting large square bales or similar sized loads that provided Deere with knowledge of the risk or such load fall backs on to operators using pallet forks attached to a 460 Loader, Deere is not aware of any other such incidents involving personal injury."  [#47-4 at 3].

In seeking to compel a further response, Plaintiff argues that the scope of the original request as drafted (rather than as narrowed in meet-and-confer correspondence) extends to "*[a]ny* similar pallet fork injury or death on a front end loader with pallet forks."  [*Id.* at 8 (emphasis added)].  Defendants have responded in opposition that no further response should be compelled as to other loaders "for the reasons set forth in the Motion for Protective Order" concurrently before the court.  [#55 at 4].  The court declines to interfere with negotiated limits set forth in counsel's correspondence, when there was not a court order specifying the scope.  Having no additional evidence before it suggesting that that additional, reasonably available information as to "the issue of injury or death while lifting a large square ball or large load with forks on the 460 leader, and with the John Deere backstop attachment, as sold with the unit" exists, the court will not order a further response at this time.

**D.  Response to Plaintiff's Interrogatory No. 7.**

Plaintiff's Interrogatory No. 7 calls for identification of persons injured "operating or using any Deere 460 front end loader, bucket level indicator, and/or pallet forks materials

handling attachment between January 1, 1995 through the present date." [#47-4 at 4]. Defendants' December 23, 2014 supplemental response to this interrogatory stated "As to injuries while lifting large square bales or similar sized loads, Deere is not aware of any other incidents involving personal injury due to fall backs onto operators using pallet forks attached to the 460 Loader." [*Id.*] Plaintiff's moving papers and attached meet-and-confer correspondence complain that it was improper for Defendants to limit their response to incidents involving only "pallet forks." [#47 at 9]. Defendants assert in opposition that they have answered the interrogatory as drafted and that "Plaintiff cannot now broaden its scope to seek information for additional attachments." [#55 at 3].

As drafted, Interrogatory No. 7 seeks information about any injury, regardless of causes, sustained by any person while operating or using any Deere 460 front end loader, bucket level indicator, and/or pallet forks materials handling attachment between January 1, 1995 to the present date. [#47-1, at 6]. Plaintiff's counsel then agreed to limit the relevant time period to January 1, 1995 to December 31, 2011. But Ms. White has failed to establish how an unlimited universe of accidents related to the 460 Loader in this time period has "substantial similarity" to her accident. For instance, if an individual was injured attaching the pallet forks to the 460 Loader, rather than operating the equipment, that dissimilar injury would be captured by Interrogatory No. 7. And as discussed above, Mr. Berry's declarations similarly fail to establish "substantial similarity" between the equipment involved in Ms. Berry's accident and every other kind of "fall back" accident.

Consistent with its ruling in court, the court orders Defendants to provide a further verified supplemental response as to "fall back" incidents involving the 460 Loader and attachments used with such front end loaders when lifting unsecured loads, not limited to pallet

forks, regardless of the size or material of the load, from January 1, 1995 until December 31, 2011. This scope is broad enough for Ms. White to test her theories of liability beyond the very narrow parameters that Deere urged, but does not permit her to engage in an unbounded quest.

### E. Responses to Plaintiff's Interrogatories No. 8-9.

Plaintiff's Interrogatory No. 8 seeks information concerning any "warning label" placed on any "Deere 460 front end loader, bucket level indicator, pallet forks materials handling attachment, square bale handling attachment, and/or hay bale spear or fork identified as model AB 11, AB12, AB 13, AB 14, AB 15, AB16, AP12, or AP13," including (as narrowed by Plaintiff's meet-and-confer correspondence and motion to compel) identification of "the person with highest responsibility to approve the warning labels and their content on the 460 Loader as sold, and as modified [each time] after sale through June 1, 2014." [#48-4 at 5-6 & #48 at 10]. Plaintiff's Interrogatory No. 9 similarly calls for information pertaining to changes to such warning labels. [#48-4 at 6-7].

Defendants, in their original and supplemental responses to Interrogatory No. 8 (in turn incorporated by reference in Defendants' responses to interrogatory no. 9), referred to a number of then apparently yet to be produced documents, and instead of identifying the "person with highest responsibility" for responsive warning labels, noted that engineer Ken Yey was "a" person "knowledgeable about the warning labels on the 460 Loader between 2002 and June, 2014." [*Id.* at 5-6]. Plaintiff contends that Defendants' responses were deficient because they failed to identify the "person with highest responsibility," and otherwise failed to comprehensively provide the details called for by all sub-parts of the interrogatories 8 and 9. [#48 at 10-11]. Defendants' Response expressly addresses only the portions of Plaintiff's interrogatories calling for identification of the "person with highest responsibility" for the

warning labels and of any changes over time, and states that documents sufficient to identify the relevant information have yet to be located.   [#55, at 4].

Because Defendants rely primarily on documents, rather than a narrative, to respond to Plaintiff's Interrogatories Nos. 8 and 9, the court orders Defendants to provide further supplemental verified responses identifying the relevant documents at issue with sufficient particularity under Rule 33(d) of the Federal Rules of Civil Procedure.   Moreover, should Defendants continue to stand on documents rather than providing full narrative responses, the court orders that Defendants certify in good faith that the "burden of deriving or ascertaining" responsive information "will be substantially the same for either party." Fed. R. Civ. P. 33(d). Further, if Defendants contend that they have been unable to identify the person with "highest responsibility" for the relevant warning labels and/or to identify changes to the labels through a diligent search of reasonably available sources (including but not limited to documents), the additional supplemental responses contemplated by this Order should plainly so state.

### F.  Responses to Plaintiff's Interrogatories No. 10-11.

Plaintiff's Interrogatory No. 10 requests that Defendants identify warnings and instructions provided to Plaintiff by Defendants and their agents about the potential hazards of "the Deere products purchased by the Plaintiff."   [#48-4 at 7].   As to any such warnings, Plaintiff's Interrogatory No. 11 requests that Defendants identify the persons responsible for providing the warnings, and the manner of dissemination.   [*Id.* at 7-8].   Defendants objected to the interrogatories on the grounds of purported overbreadth and undue burden, the asserted "vague and ambiguous" potential meanings of the terms "warnings" and "hazards," and the absence of an express time limitation.   [*Id.*]   Defendants' substantive supplemental responses provided bates references to materials said to consist of "operator manuals, warning labels and

product brochures," and also stated that Plaintiff was provided a "4600 Tractor and 460 Loader Owner's Manual" by the equipment dealer.  [*Id.*].

Plaintiff's moving papers contain no evidence that Defendants' substantive responses to these interrogatories (as opposed to the general objections accompanying them) are incomplete or otherwise deficient.  The court accordingly declines to order further responses to Plaintiff's Interrogatories Nos. 11 and 12.  *See  Bayview Loan Servicing*, 259 F.R.D. at 518 (burden is on the proponent of additional discovery to prove that the opposing party's answers are incomplete); *see also Calder v. Blitz U.S.A., Inc.*, No. 2:07–cv–387–TC–PMW, 2010 WL 2639971, at *3 (D. Utah June 28, 2010) ("Even though Blitz provided substantive responses to both Interrogatory Nos. 3 and 21, Plaintiff also presents arguments with respect to the general objections Blitz included in its responses to those interrogatories. The court has determined that it is unnecessary to address the merits of those arguments and objections. In the court's experience, it is commonplace for parties responding to discovery requests to include general objections along with their substantive responses as a way of avoiding possible waiver of those objections.") & *Tango Transport, L.L.C. v. Transport Intern. Pool, Inc.*, No. 08–0559, 2009 WL 2390312 at * 3 (W.D. La. July 31, 2009) ("Regarding Tango's complaints pertaining to TIP's objections to Interrogatory Nos. 2, 3, 4, 5, 7, 8, 9, 10, Tango appears to take issue only with the presence of the objections, which it contends were waived based on TIP's untimely responses and should be removed, and not with the substance of the answers TIP provided. Given that Tango makes no argument as to how the answers are substantively inadequate, Tango's motion to compel in this regard is DENIED.").

## II.   Defendants' Motion for Protective Order.

Defendants seek an order limiting the scope of topics 1, 4, 5, 6 7, and 8 in Plaintiff's Notice of Deposition for Topics Pursuant to Rule 30(b)(6), served on January 30, 2015. [#51 at 3-4]. As to all topics at issue, Defendants request that the court limit corporate representative examination to "(1) the 4600 model tractor as well as the 4500 and 4700 models, (2) to which the 460 Loader and pallet fork are attached, (3) when carrying large square loads similar to the subject bale of hay." [*Id.* at 10]. Based on the record before it, this court declines to restrict the scope of discoverable information so narrowly.

### A.   Legal Standard.

This court may exercise its discretion "for good cause" shown to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ .P. 26(c)(1). Discovery into matters not relevant to the case imposes a *per se* undue burden. *See McBride v. Medicalodges, Inc.*, 250 F.R.D. 581, 586–87 (D. Kan. 2008) (finding topics in a 30(b)(6) notice irrelevant and granting a protective order as to those topics). A protective order may "forbid[ ] inquiry into certain matters, or limit[ ] the scope of disclosure or discovery to certain matters." Fed. R. Civ .P. 26(c)(1)(D). The party seeking the protective order bears the burden of showing good cause. *McBride*, 250 F.R.D. at 583 (citation omitted). However, when a discovery request does not have relevance on its face, the party seeking discovery has the burden to show relevancy. *McBride*, 250 F.R.D. at 587. "Whether to enter a protective order lies within the court's discretion." *Id.* at 583.

### B.   Topic 1.

Topic 1 seeks examination of Defendants' practices with respect to "accident records that pertain to wheeled tractors lifting, stacking and/or transporting any materials, using any

combination of loaders and materials handling attachments." [#51-1, at 6]. As discussed in detail above, Plaintiff's assertion that any accident involving any equipment under any circumstances, so long as it either a fall back accident, or related to the products used by Ms. White, is too broad. Because Plaintiff makes no showing in opposition that tractors beyond the 4500, 4600, and 4700 models (which Defendants represent they are amendable providing discovery as to) are potentially relevant to this dispute within the meaning of the law of this circuit, the court finds that there is good cause to limit the scope of Topic 1 as follows. Ms. White is permitted to inquire about the 4500, 4600, and 4700 models, using the 460 Loader with any accessory that can be used to lift an unsecured load. The court however does not find on the record before it that additional limitation would be necessary to prevent "undue burden or expense" or any other condition meriting issuance of a protective order under Fed. R. Civ .P. 26(c)(1).

### C.     Topic 4.

Topic 4 seeks examination of the design, engineering, and hazard testing history of the equipment purchased by Plaintiff. [#51-1 at 3, 7]. Defendants' request to narrow the topic appears to be based on the fact that the topic seeks examination of "loads of various types" and extends to material handling attachments including "bucket, forks, and/or hay spears" (rather than just the pallet forks carrying a large square bale involved in the incident forming the gravamen of Plaintiff's complaint) [#51 at 7]. The court denies Defendants' motion as to this request. Because the topic is limited to the tractor purchased by Plaintiff, the court finds in the absence of competent rebuttal evidence from Defendants that the topic as drafted is facially targeted at discovery of potentially substantially similar products and incidents.

### D.    Topic 5.

By its terms, Topic 5 seeks examination of (*inter alia*) Defendants' "knowledge of FORESEEABLE MISUSE related to handling, lifting, transporting, moving and/or stacking loads of any kind using wheeled tractors, loaders and any DEFENDANTS) branded materials handling attachment."  [#51-1 at 7].  The court finds that this topic is overbroad with respect to both the range of equipment and incidents contemplated, and accordingly orders that corporate representative examination be limited to the 4500, 4600, and 4700 tractors, utilizing the 460 Loader with attachment accessories, and to "foreseeable misuses" potentially increasing the risk of a "fall back" incident.

### E.    Topic 6.

Topic 6 seeks examination of (*inter alia*) Defendants' "[s]pecific knowledge of HAZARDS related to handling, lifting, transporting, moving and/or stacking loads of any kind using wheeled tractors, loaders and any DEFENDANTS' branded materials handling attachment."  [#51-1 at 8].  As with Topic 5, the court finds that this topic is overbroad with respect to both the range of equipment and incidents contemplated, and accordingly orders that corporate representative examination be limited to the 4500, 4600, and 4700 tractors, utilizing the 460 Loader with attachment accessories, and to "hazards" potentially increasing the risk of a "fall back" incident.

### G.  Topic 7.

Topic 7 seeks examination of, *inter alia*, Defendants' knowledge of "operator control design, engineering, analysis and testing of controls for operating the loader and its attachments of the EQUIPMENT during the DESIGN PERIOD, including understanding trade-off considerations of operator," and knowledge of "the development process for operator instruction

manuals, including methods used to determine the effectiveness of such instruction manuals so as to assure safe and stable operation of the EQUIPMENT with respect to lifting, moving, transporting and stacking loads of any kind controls responsiveness and reliability." [#51-1 at 9]. Because the definition of "EQUIPMENT" is limited to the Deere instrumentalities Plaintiff purchased, the court finds that the topic as drafted is appropriately targeted at information concerning potentially substantiality similar products and incidents and poses no risk of undue burden based on the record before the court. Accordingly, Defendants' motion for protective order is denied with respect to Topic 7.

### H.  Topic 8.

Topic 8 seeks examination of claims and lawsuits involving "similar EQUIPMENT and INCIDENTS" to those at issue in this litigation. [#51-1 9-10]. On the record before the court, the court orders that this topic be limited to the 4500, 4600, and 4700 tractors, utilizing the 460 Loader with attachment accessories, and to instances involving fall backs. Defendants' motion for protective order as to Topic 8 is accordingly granted in part to the extent set forth herein.

### III.   Plaintiff's Motion to Compel Production of Documents

At the heart of Plaintiff's Motion to Compel Production of Documents [#59] is again, Ms. White's strongly held belief that Defendants are withholding relevant documents from her. The Parties' disputes over Deere's general objections do not, in this court's mind, advance the objectives of discovery. Instead, the court will focus its efforts on Ms. White's concern that Deere is withholding relevant documents in its possession, custody and control, and the specific Requests for Production at issue.

With respect to its search for relevant documents, Deere argues that Plaintiff's arguments are based on documents that are more than twenty years old, and which relate to other products

with different equipment design than the subject products. [#72, at 6]. Deere also verified in its Interrogatory responses that "the Deere factory responsible for the manufacture and design of the 460 Loader has been closed. Thus, key employees with knowledge about these products are no longer with Deere and the gathering of records has been difficult and has progressed slowly. To date, it is unclear whether all available records have been located." [#72 at 7]. While the court is sympathetic to Plaintiff's concern that certain documents she seeks may be in the exclusive control of Deere, the record before the court does not establish that Deere is improperly withholding documents. Certainly, Ms. White has been able to obtain historical documents related to Deere, and even some discovery materials from other cases. [#72]. And the court cannot compel what does not exist. *See Smith v. Pizza Hut*, No. 09–cv–01632–CMA–BNB, 2013 WL 1751850, at *3 (D. Colo. Apr. 23, 2013) (J. Boland). To be clear, however, Deere is responsible for producing documents related to the design and functionality of the 4600 Tractor, 4500 Tractor, 4700 Tractor, 460 Loader, and the accessories associated with the 460 Loader (such as buckets, forks, and spears), as they relate to fall back accidents.

### A. Requests for Production Nos. 2 and 5.

Applying the standard as set forth above, to the extent that Deere has not done so, the court orders Deere to produce documents responsive to Requests for Production Nos. 2 and 5 related to the hazards of or foreseeable misuse of fall back accidents, involving the EQUIPMENT as defined by Ms. White, *i.e.*, 4600 Tractor, 460 Loader, and pallet fork attachment.

### B. Requests for Production Nos. 12, 13, 14, 15, 16, and 17

In these Requests, Ms. White seeks documents regarding Deere's compliance with industry standards and the individuals who were involved with industry organizations and/or

compliance with standards.  As part of Deere's response, it states that identified the standards and that they are publicly identified, and other requested documents were "not located."  To the extent that Ms. White seeks documents regarding Deere's general participation in these industry standards groups, whether or not they related to fall back hazards, such requests are overly broad and do not appear to be reasonably calculated to lead to admissible evidence.  Nevertheless, the court orders Deere to produce documents reflecting its compliance with regulations as related to the EQUIPMENT as defined by Plaintiff, *i.e.*, 4600 Tractor, 460 Loader, and pallet forks.  While the standards documents are publicly available, Deere has not demonstrated any burden to producing them, so that all Parties may be clear as to the standards at issue.[3]  In addition, with respect to the documents not located to date by Deere, the court reminds Deere of its continuing obligation under Rule 26(e) to perform a reasonable search and supplement these discovery responses in a timely fashion, should relevant, non-privileged documents be found, including but not limited to any documents that relate to the fall back hazard for the 4600 Tractor, 460 Loader, and pallet forks for the Requests that refer to EQUIPMENT as defined by Ms. White (Request Nos. 12, 13, and 17) and also including the 4500 Tractor and the 4700 Tractor, as well as additional attachments to the 460 Loader for the Requests that are not limited to EQUIPMENT (Request Nos. 14, 15, and 16).

### C.  Request for Production No. 21

Request for Production No. 21 seeks documents that describe how Defendants managed their distributor network in order to obtain post sales user/operator experience data, including

---

[3] To the extent that Defendants' counsel is concerned that the standards are copyrighted and therefore, should not be produced, a number of cases suggest that use of copyrighted material in the context of litigation constitutes fair use.  *See Bond v. Blum*, 317 F.3d 385 (4th Cir. 2003); *Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey*, 497 F. Supp. 2d 627 (E.D.Pa. 2007); *American Institute of Physics v. Schwegman Lundberg & Woessner PA*, 2013 WL 4666330 (D. Minn. Aug. 30, 2013).

accident reports and copies of all such accident reports obtained during the defined "DESIGN PERIOD." Deere states that its narrative response to Request for Production No. 21 is sufficient, and Ms. White's request directed to "any and all documents" is too broad. While the court agrees that the requirement to produce "all" documents that describe how Defendants managed their distributor network is too broad, it appears from Deere's response that it has also failed to produce any, and its narrative is insufficient to fully respond to the request for production. The court orders Defendants to produce documents sufficient to reflect their post sales user/operator experience data and accident reporting, as well as any accident reports or documents reflecting accidents involving fall back incidents with the 4600 Tractor, 4500 Tractor, 4700 Tractor, 460 Loader, and any attachment to the 460 Loader.

### D.  Request for Production No. 29

Deere responds to Request for Production No. 29, which seeks documents regarding the warnings related to the defined EQUIPMENT, by referring back to its responses to Interrogatory No. 8 and 10 [#72, at 9; #47-1 at 8-10]. Deere states that it has produced the manuals for the 4600 Tractor and the 460 Loader which contain copies of the warnings. [#72, at 9]. Ms. White complains that Defendants have failed to describe or quantify the burden of producing responsive documents. On the record before it, the court cannot make a determination as to whether additional documents exist. Nevertheless, to the extent that the documents exist and may be obtained through a reasonable search, the court directs Defendants to produce documents or things that reflect the warning messages related to the 4600 Tractor, the 460 Loader, and the pallet forks. With respect to Request for Production No. 29, this order is not limited to warnings related to fall back hazards, as Ms. White should be able to discover the absence of a warning regarding fall back hazards in the midst of other warnings.

### E.  Request for Production No. 30

Plaintiff also complains that Defendants have failed to produce documents that reflect the training of sales agents, while Defendants argue that no responsive documents have been found. Again, based on the record before it, the court cannot determine that Defendants are withholding documents that are non-privileged and responsive and cannot compel production of documents that defense counsel represent, as officers of the court, do not exist.  The court again reminds Defendants of their continuing obligation to supplement under Rule 26(e).

For the reasons set forth above, Plaintiff's Motion to Compel Production of Documents is GRANTED IN PART and DENIED IN PART.

## IV.   Defendants' Motion to Compel Response to Request for Production No. 8

Ms. White now agrees to produce documents in her possession responsive to Request for Production No. 8.  Therefore, Defendants' Motion to Compel is GRANTED and Ms. White is ordered to provide those documents no later than March 27 so that Deere can have adequate time to examine them prior to the Rule 30(b)(6) deposition scheduled for April 9.  Use of such documents in the deposition must be tied to the Rule 30(b)(6) Topics already propounded and further defined herein. In addition, the court notes that Deere may object to these documents at deposition if Deere believes that questions about such documents are outside of the scope of the Rule 30(b)(6) deposition, and so long as any such objection is upheld by the trial court, the deponent's response will be attributed to the individual rather than the corporation.

## CONCLUSION

For the reasons set forth herein, IT IS ORDERED THAT:

(1) Plaintiff's Motion to Compel [#47] is GRANTED pursuant to the terms of this Order with respect to Plaintiff's Interrogatories 7, 8, and 9, and is otherwise DENIED;

(2) Defendants' Motion for Protective Order [#51] be GRANTED IN PART with respect to topics 1, 5, 6, and 8 of Plaintiff's 30(b)(6) deposition notice, and is otherwise DENIED, pursuant to the terms of this Order;

(3) Plaintiff's Motion to Compel Requests for Production [#59] is GRANTED IN PART with respect to Request Nos. 2, 5, 12, 13, 14, 15, 16, 17, 21, 29, and is otherwise DENIED, pursuant to the terms of this Order;

(4) Defendant's Motion to Compel [#74] is GRANTED;

(5) Each party will bear its own costs and fees associated with these discovery motions; and

(6) The Parties are ORDERED to call in to Chambers for informal discovery conferences prior to the filing of any additional discovery motions.

DATED:  March 23, 2015                    BY THE COURT:

                                          /s/ Nina Y. Wang_____
                                          United States Magistrate Judge