# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02173-PAB-NYW

MIRIAM WHITE,

    Plaintiff,

v.

DEERE & COMPANY,
JOHN DEERE LIMITED,
JOHN DOES 1-5,

    Defendants.

_____

## ORDER DENYING MOTIONS FOR DEFAULT
_____

Magistrate Judge Nina Y. Wang

    This action is before the court on two motions filed by Plaintiff Miriam White ("Plaintiff" or "Ms. White"):

    (1)    Motion For Entry Of Default ("First Motion for Default"), Pursuant To F.R.C.P. 37(B)(2)(A), with Incorporated Authority filed by Plaintiff on May 14, 2015 [#82][1]; and

    (2)    Plaintiff's Second Motion For Entry Of Default and Other Sanctions ("Second Motion for Default") Pursuant to F.R.C.P. 37(B)(2)(A), with Incorporated Authority filed by Plaintiff on June 18, 2015 [#98] (collectively with the First Motion for Default, the "Motions").

    These motions were referred to the undersigned Magistrate Judge pursuant to the Order of Reference dated August 27, 2013 [#9], the Reassignment dated February 9, 2015 [#54], and the memoranda dated May 15, 2015 and June 18, 2015, respectively [#83, #101]. The court has

---

[1] For consistency and ease of reference, this Order utilizes the docket number and page number assigned by the Electronic Court Filing system for its citations to the court file.

reviewed the Parties' briefing, exhibits, and the entire court file (including but not limited to the various discovery motions and orders in this matter), considered the applicable case law, and entertained oral argument on the Motions on August 27, 2015. For the following reasons, this court ORDERS that both Motions are DENIED.

## BACKGROUND AND RELEVANT PROCEDURAL HISTORY

The background of this case, including the repeated discovery disputes between the Parties, has been set out in detail in other orders of the court, *see e.g.,* [#77, #145], so the court will not recount that history at length here. In its March 23, 2015 Discovery Order ("March 23 Order"), the court directed Defendants Deere & Company and John Deere Limited's (collectively, "Defendants," or "Deere") to make certain supplementations to its existing discovery responses [#77]. The First Motion for Default is premised on Plaintiff's assertion that Deere's supplemental responses to Plaintiff's Requests for Production Nos. 2 and 5, and Plaintiff's Interrogatory No. 4 (collectively, the "Requests"), are not compliant with the court's March 23 Order. Ms. White contends that the deposition testimony of Deere's corporate designee, Kurt Ney,[2] on April 29, 2015 demonstrated that Deere failed to produce in discovery four "critically important" documents,[3] even though they were clearly responsive to Request for Production Nos. 2 and 5. [#82 at 2-4]. Ms. White also contends that Deere's Response to Interrogatory No. 4 which asserted that "Deere … became aware of the accident circumstances involving plaintiff when they were served with the Complaint filed in this case" was false. [#82 at 14].

---

[2] In support of this first Motion for Default, Ms. White attaches the entire 350 pages of the deposition of Mr. Ney. The court reminds the Parties that in the future, the Parties should attach only the relevant pages of any transcript as an exhibit to avoid burdening the court with excessive filings. In this case, the court has reviewed only the citations identified by the Parties.

[3] Ms. White obtained these documents from her expert.

Plaintiff also contends that Mr. Ney's deposition identified five additional potential witnesses who had information regarding the design of the 4600 Tractor and the 460 Loader – the products that Ms. White was using when she was injured. During an informal discovery conference held on May 15, 2015, the court permitted Plaintiff to take the deposition of five individuals identified by Mr. Ney during his deposition, and that such depositions should be limited to one hour unless the witness testified that he or she was involved with the design of the 460 Loader. [#84]. Plaintiff proceeded with those depositions, during which "two of the five witnesses, Mr. Finck and Ms. Harrsion [sic], testified to the names of the design engineers." [#98 at 3].

On June 18, 2015, Plaintiff filed her Second Motion for Entry of Default based on this testimony, contending that Mr. Ney had improperly withheld the names of the design engineers, despite the fact that Ms. White's Rule 30(b)(6) Topics 4, 5, 6, and 7 "dealt specifically with obtaining the names of and information about design engineering, hazard analysis, physical testing, foreseeable misuse, specific knowledge of hazards, and human factors relating the 4600 Tractor and the 460 Loader. [*Id.*].

Plaintiff argues that "discovery karma" as implemented by Rule 37 of the Federal Rules of Civil Procedure should therefore, lead to dismissal of this action based on these alleged abuses by Deere. This court respectfully disagrees.

## ANALYSIS

**I.     Standard of Review**

Rule 37(b)(2)(A) authorizes a court to sanction a party for failure to comply with a discovery order by, among other things, "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence," or

3

"rendering a default judgment against the disobedient party." Fed.R.Civ.P. 37(b)(2)(A)(ii) and (vi). The plain language of Rule 37(b) requires that a court order be in effect before sanctions are imposed. *Salahuddin v. Harris*, 782 F.2d 1127, 1131 (2d Cir. 1986). A violation of such an order is required before sanctions can be entered pursuant to Rule 37(b). *See, e.g.*, *Buffington v. Balt. Cnty.*, Md., 913 F.2d 113, 132 n. 15 (4th Cir. 1990) (holding that a court may impose sanctions under Rule 37(b) "only to violations of a court order to permit or provide discovery, or one in regard to a discovery conference"); *see also Matter of Baker*, 744 F.2d 1438, 1440-41 (10th Cir. 1984) (recognizing that imposition of sanctions pursuant to Rule 37(b) requires the court to find that a party or a party's lawyer is in violation of a prior court order).

"Determination of the correct sanction for a discovery violation is a fact-specific inquiry, and in making such a determination trial courts are accorded broad discretion." *Gates Rubber Co. v. Bando Chemical Industries*, Ltd., 167 F.R.D. 90, 102 (D. Colo. 1996) (citing *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642 (1976) (internal quotation marks and further citation omitted)). A court's discretion, however, is guided by choosing a sanction that is both "just" and "related to the particular claim which was at issue in the order to provide discovery." *Insurance Corp. of Ireland v. COmpagnie des Bauxites de Guinee*, 456 U.S. 695, 707 (1982). Dismissal of an action as a sanction for discovery abuses is considered an extreme sanction that is only appropriate in cases of willful misconduct. *See Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992).

## II. Application to First Motion for Default

### A. Adequacy of Defendants' Supplemental Responses to Plaintiff's Requests for Productions Nos. 2 & 5

In her First Motion for Default, Plaintiff argues that Defendants failed to comply with the court's March 23 Order, because Defendants failed to supplement their responses to Plaintiff's

4

Requests for Production Nos. 2 and 5 with production of the following documents: 1) a "Product Safety Manual by Deere & Company, April 1997" [#82-3]; 2) the 1993 4th edition "FMO Hay and Foraging" document [#82-4]; 3) the "John Deere Standard, JDS–D48 Design Standard for Safety Signs" [#82-5]; and 4) the September of 1979 "The Product Safety Guideline Hazard Discovery and Rating System by Deere & Co." [#82-6]. [#82 at 4]. As Defendants argue (and Plaintiff implicitly concedes), these documents "are not specific to the 4600 Tractor and/or 460 Loader" used by Plaintiff during the "fall back" accident at the core of this lawsuit. [#110 at 3]. Defendants therefore contend the four documents were not "called for by any request for production as narrowed by Plaintiff's agreement and the Court's order," and even if they should have been produced, dismissal would be unwarranted because Plaintiff has had them in her possession since the early stages of discovery in this case. [*Id.* at 1].

> Plaintiff's Request for Production No. 2 called for Deere to:
>
> Provide any and all DOCUMENTS that define or describe how those HAZARDS identified in ¶1. were disseminated, analyzed, studied and/or considered in the design and engineering of EQUIPMENT; were disseminated to marketing, sales and/or product support organizations; were used in the development of any and all product warning labels or statements of any degree and used in any way such as a label affixed to EQUIPMENT, a written statement in any DOCUMENT or an audio/visual communication of any type, during the DESIGN PERIOD.
>
> Similarly, Plaintiff's Request for Production No. 5 required Deere to:
>
> Provide any and all DOCUMENTS that identify DEFENDANT(S) knowledge of FORESEEABLE MISUSE by operators of the EQUIPMENT, specifically under the conditions when operators are lifting, transporting and/or stacking loads of various types, including rectangular bales of hay, using various "approved" (see use of "approved" in ¶30) attachments available as of June, 2002 and developed during the DESIGN PERIOD.

[#59-1 at 3, 5]. In its March 23 Order, the court ordered "Deere to produce documents responsive to Requests for Production Nos. 2 and 5 related to the hazards of or foreseeable

misuse of fall back accidents, involving the EQUIPMENT as defined by Ms. White, *i.e.*, 4600 Tractor, 460 Loader, and pallet fork attachment." [#77 at 22].

Defendants failure to produce the four documents at issue, which are, at best, general engineering, design, and safety documents that may be part of a Deere engineer's general compendium of knowledge about the risks of tractors, loaders, and front-end attachments in general, does not provide an adequate ground for any sanction, let alone dismissal.[4] The court's March 23 Order limited Plaintiff to discovering information about hazards or forseeable misuse of fall back accidents specifically involving the 4600 Tractor, the 460 Loader, and the pallet fork attachment. [*Id.*]. In reviewing the four documents, none of them specifically addresses any design or hazards of the 4600 Tractor, 460 Loader, or pallet fork attachment. [#146]. Nor does Ms. White establish that any of the information in the documents pertains to equipment that bore a "substantial similarity" to the 4600 Tractor, 460 Loader, or pallet fork attachment. And while Mr. Ney testified that the manuals were generally used during the time frame when the 4600 Tradtor, 460 Loader, and pallet fork attachment would have been designed [#82-2 at 86:18-87:3], he did not testify that these references were more than simply generalized reference material to which Deere employees could have referred.

The court understood that Plaintiff's theory was that Deere's general knowledge regarding fall back risks associated with tractors should be sufficient to warrant widespread discovery on every tractor and loader offered by Deere, without regard to size, configuration, or time. Nevertheless, the court rejected the proposition that that Plaintiff was entitled to discovery

---

[4] Plaintiff contends that "White's taking of Deere's 30 B 6 Witness [Kirk Ney's] deposition on April 29, 2015" provides proof that Defendants "suppressed responsive and relevant documents." [#82 at 2]. For the reasons discussed here and in the court's prior March 23 Order, the general reference documents Plaintiff relies on to support this assertion are not "responsive" and "relevant" as contemplated by any discovery Request now before the court, as expressly narrowed by the March 23 Order.

of any Deere tractor, front-end loader, or attachments across product lines without regard to whether other equipment was "substantially similar" to the 4600 Tractor, 460 Loader, or pallet fork attachment, finding that Ms. White and her expert, Tom Berry, had failed to affirmatively establish that there was a reasonable likelihood that there was a "substantial similarity" between the products that were involved in Ms. White's injury and every single other fall back accident ever experienced by any person, so long as Deere equipment was used. [#77 at 11]. As discussed in the March 23 Order, the court cabined Plaintiff's requests pursuant to Rule 26's directive to ensure that discovery was proportional. And contrary to Plaintiff's characterization of his testimony, Mr. Ney did not admit that the manuals were specifically used by the designers of the 4600 Tractor or 460 Loader.  For instance, Ms. White points to "page 90 line 15 to page 91 line 5-14" for to support its proposition.  [#82 at ¶ 14].  But Mr. Ney did not even mention the 4600 Tractor or 460 Loader during that testimony:

```
15         Q.   So now that we have covered the
16    Exhibit 32, to your knowledge, is there at this
17    time a product safety manual at John Deere?
18         A.   Outside of this?
19         Q.   Yes, sir.
20         A.   Yes.
21         Q.   And what is that called?
22         A.   The product safety manual.
23         Q.   All right.  And I would like for you
24    to look, please, at Exhibit No. 2, okay, and
25    that's the 1997 iteration, and we also have one
```

7

```
 1    in 1997.
 2         Do you know if there's a product
 3    safety manual that has been issued subsequent
 4    to 1997?
 5         A.  Not for sure.  There may have been.
 6         Q.  Hang on one second.  If you look at
 7    Exhibit No. 20, this is the Deere & Company
 8    April 1997 product safety manual.  Is this the
 9    one that you're familiar with?
10         A.  I'm familiar with this, yes.
11         Q.  Can you take a look at that and see
12    if it's a true and correct copy, to the best of
13    your belief?
14         A.  It appears to be, yes.
```

[#82-2, 90:15-91:14]. The fact that Mr. Ney testified that the designers of the 4600 Tractor and the 460 Loader "should have taken into account" the information contained in the 1997 Manual is not the same as an admission that the Manual "would have been used by the designers of the Models 4600 and 460." In addition, the fact that the Manual was in existence and in use somewhere in Deere at the time the products were designed is again, not equivalent to an admission that the specific designers of the 4600 Tractor and 460 Loader did, in fact, use them. Similarly, while Ms. White contends that Mr. Ney admitted that the HDRS manual would have been used when Models 4600 and 460 were designed [#82 at ¶ 19], the actual testimony fails to establish which, if any, of the subsystems of the 4600 Tractor or 460 Loader (because Mr. Ney made clear that entire tractors were not subject to such reviews) were subjected to any HDRS review, and whether the JD HDRS manual was consulted by the designers of the 4600 Tractor or 460 Loader. [#82-2, 233:6-24]. There is no apparent deficiency in Defendants' supplemental

8

responses to the Requests for Production Nos. 2 and 5. As a result, no further relief as to Requests for Production No. 2 and 5 is warranted.[5]

Finally, the court also notes that Ms. White alleges that these four documents were "all hidden" [#82 at 13], there is no evidence that Deere actually hid these documents. Plaintiff's expert possessed them, and sometime during discovery, Plaintiff's counsel gained access to them. Nothing in the record suggests that counsel requested updated versions of these documents from Deere's counsel, before the requests were posed to Mr. Ney. Given the lack of clear nexus between the documents and the discovery requests as limited by the court, I cannot agree with Plaintiff's assertions of malfeasance by Defendants.

### B. Adequacy of Defendants' Supplemental Response to Plaintiff's Interrogatory No. 4

Plaintiff also contends that Defendants' original and supplemental responses to Plaintiff's Interrogatory No. 4 are evasive, and therefore, sanctionable. [#82 at 13-14]. As initially framed, Interrogatory No. 4 called for Defendants to identify when they "became aware that a user/operator/owner of a Deere front-end loader and tractor could be injured or killed if the user/operator/owner used the Deere tractor and front-end loader with a Deere pallet forks material handling attachment to move, lift, and/or stack square hay bales." [*Id.*]. Subsequently, Plaintiff agreed that the scope of Interrogatory No. 4 would be limited to "the issue of injury or death while lifting a large square bale or large load with forks on the 460 loader, and with the

---

[5] This Order, and the court's March 23 Order, should not be read to hold that a defendant's "library of internal manuals, guidelines procedures, etc., that cover design and engineering principles to be applied to all new products" would necessarily be beyond the bounds of discoverability in a products liability action, if properly and timely sought by discovery requests appropriately tailored to the particular claims and defenses in such a case. [#109 at 3]. Instead, the undersigned merely again recognizes that such materials are not called for by Requests for Production Nos. 2 and 5 in this case, as those and other Requests were previously construed and limited by the court.

John Deere backstop attachment, as sold with the unit." [#102-5 at 3]. Pursuant to this agreed limitation, Defendants' most recent supplemental response, served in December of 2014, stated that "As to information arising from notice of injuries or deaths while lifting large square bales or similar sized loads that provided Deere with knowledge of the risk or such load fall backs on to operators using pallet forks attached to a 460 Loader, Deere is not aware of any other such incidents involving personal injury." [#47-4 at 3].

Dissatisfied with this response, Plaintiff moved to compel a further answer based on the language of the interrogatory as originally framed (*i.e.*, not limited to the 460 Loader used by Plaintiff herself), and sought a response "referencing the prior knowledge of and circumstances of occasions when a bale of hay or large object 'fell back' off the forks onto the operator a Deere tractor, using a loader attachment with 'forks.'" [#47 at 8-9]. Because Plaintiff had previously agreed that the scope Interrogatory No. 4 should be limited to the 460 Loader, and apparently construed the "aware[ness]" at issue as arising from actual incidents of "fall backs" rather than potential knowledge of hypothetical risks, the court found that no further response was necessary. [#77 at 12-13].

Because the court previously declined to order a further response to Plaintiff's Interrogatory No. 4, any purported deficiencies in the supplemental response then before the court cannot provide a basis for sanctions pursuant to Rule 37(b). *Matter of Baker*, 744 F.2d at 1440-41. In addition, in looking at the statement that Plaintiff boldly calls "a lie," it appears consistent with Mr. Ney's testimony. Indeed, Mr. Ney testified that he was unaware of any fall back accidents involving the 4600 Tractor, 460 Loader, and the pallet fork attachment. [#82-2 at 20:12-21:1]. There is also no evidence in the record that Deere had any knowledge of the

10

circumstances of Plaintiff's injury before they were served with the Complaint filed in the case. [#82 at 14].

To the extent the First Motion for Default could be construed as requesting a further supplemental response to that interrogatory on the ground that Defendants' prior responses were limited to the relevant known actual accident history of the 460 Loader, the court finds that Plaintiff should be bound to the scope of the Request reflected in her prior meet-and-confer correspondence and moving papers—*i.e.*, "aware[ness]" stemming from actual fall-back accidents involving the 460 Loader. Accordingly, it remains the case that no further response is warranted.

### C. Defendants' Re-Assertion of Previously Raised Objections

Plaintiff complains that the court-ordered supplemental responses provided by Defendants were purportedly improper because they contained objections. [#82 at 10-12]. However, the court's March 23 Order expressly declined to rule on the objections contained in Defendants' prior responses. [*Id.* at 21]. Because Plaintiff's First Motion for Default again fails to make any showing that Defendants improperly stood on any particular objection as a means of evading their obligation to provide appropriately complete substantive responses, I also once again decline to provide what would essentially be an advisory opinion on the merits of Defendants' objections in a vacuum.[6]

---

[6] On Reply, Plaintiff also sought to take issue with the form of Defendants' verification to their supplemental interrogatory responses. [#110 at 10]. Reply briefs are intended to reply to arguments made in the response brief–they do not provide the moving party a new opportunity to present yet another issue for the court's consideration. *Gates Corp. v. Dorman Products, Inc.*, No. 09–cv–02058, 2009 WL 4675099, at *2 (D. Colo. Dec. 7, 2009). Because this argument was belatedly raised on Reply without adequate explanation of its omission in Plaintiff's initial moving papers, I decline to pass on its potential merit. *Cf. Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005) (observing that district court can decline to consider new material raised in a reply).

### III.     Application to Second Motion for Default

Plaintiff's Second Motion for Default is premised on purportedly incomplete testimony provided by Mr. Ney about individuals who might have knowledge about the design of the 4600 Tractor, 460 Loader, or pallet fork attachment. [#98]. Like the First Motion for Default, Plaintiff's Second Motion for Default cites Rule 37(b) as the procedural basis for requesting sweeping discovery sanctions (*i.e.* default). [*Id.* at 1]. But Plaintiff's Second Motion for Default fails to make any showing—indeed, fails to attempt to make any showing—that Mr. Ney's testimony breached any prior court order. [*Id.* at 1-11]. And in reviewing Plaintiff's written discovery, it is clear that Plaintiff had not asked Defendant to identify the individuals who were involved with the design of the 4600 Tractor, 460 Loader, or the pallet fork attachment. [#47-1, #59-1]. Nowhere in Plaintiff's Interrogatories does she ask Deere to identify the engineers responsible for the design of the 4600 Tractor, 460 Loader, or pallet fork attachment. [#47-1]. These failures alone require denial of Plaintiff's Second Motion for Default.[7]

### CONCLUSION

Because Plaintiff Miriam White's First and Second Motions for Default fail to show that Defendants violated any prior discovery order of this court, IT IS ORDERED that:

(1) Plaintiff's First Motion for Default [#82] is DENIED;

(2) Plaintiff's Second Motion for Default [#98] is DENIED.

---

[7] To the extent Plaintiff's Second Motion for Default could be construed as a motion to compel additional deposition testimony by Mr. Ney, an alternative designee, or some other potential deponent, the court declines to order such relief, for essentially the same reasons detailed in the court's prior omnibus discovery Order. [#145 at 13-15]. For the reasons stated herein and in that Order, the court declines to enter any sanctions against Deere based on Mr. Ney's Rule 30(b)(6) testimony.

DATED September 16, 2015.     BY THE COURT:

                              s/ Nina Y. Wang
                              Nina Y. Wang
                              United States Magistrate Judge