IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 13-cv-02173-PAB-NYW

MIRIAM WHITE,

 Plaintiff,

v.

DEERE & COMPANY,
JOHN DEERE LIMITED, and
JOHN DOES 1-5,

 Defendants.

_____

**ORDER**
_____

This matter is before the Court on defendants' Motion to Exclude the Testimony of Thomas Berry [Docket No. 104].

## I. BACKGROUND

This is a products liability action that arises out of an accident that occurred on August 17, 2011 while plaintiff Miriam White was operating her Deere Model 4600 compact utility tractor and Model 460 loader. Ms. White claims that she suffered facial injuries and traumatic brain injury as a result of a hay bale falling onto her while operating the tractor. Docket No. 104 at 1-2. Ms. White alleges that her tractor had design defects that created an unreasonable risk of injury from falling hay bales and that her injuries resulted from these defects. Docket No. 150 at 2-3.

Ms. White has designated Thomas Berry as an engineering expert to support her product liability claims. *See* Docket No. 104 at 2; Docket No. 81-1 at 4. Mr. Berry

opines that the tractor's design violated industry standards and should have been designed differently. Docket No. 104 at 2; Docket No. 81-1 at 14, 17-20. Mr. Berry opines that Dr. Robert Cargill's accident reconstruction theory is incorrect in his May 21, 2015 report and provides two accident reconstruction theories in his unsigned, unsworn July 13, 2015 declaration. Docket No. 93-3 at 1; Docket No. 119-1 at 11.

## II. FEDERAL RULE OF EVIDENCE 702

Rule 702 of the Federal Rules of Evidence provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. As the rule makes clear, while required, it is not sufficient that an expert be qualified based upon knowledge, skill, experience, training, or education to give opinions in a particular subject area. Rather, the Court must "perform[] a two-step analysis." *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). After determining whether the expert is qualified, the specific proffered opinions must be assessed for reliability. *See id.*; Fed. R. Evid. 702 (requiring that the testimony be "based on sufficient facts or data," be the "product of reliable principles and methods," and reflect a reliable application of "the principles and methods to the facts of the case").

Rule 702 imposes on the district court a "gatekeeper function to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'"

*United States v. Gabaldon*, 389 F.3d 1090, 1098 (10th Cir. 2004) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)). To perform that function, the Court must "assess the reasoning and methodology underlying the expert's opinion, and determine whether it is both scientifically valid and applicable to a particular set of facts." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (citing *Daubert*, 509 U.S. at 592-93). Where an expert relies on experience, the expert "must explain how that experience leads to the conclusion reaches, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *United States v. Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014) (quoting Fed. R. Evid. 702, advisory committee notes).

Although it is not always a straightforward exercise to disaggregate an expert's method and conclusion, when the conclusion simply does not follow from the data, a district court is free to determine that an impermissible analytical gap exists between premises and conclusion. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). In examining an expert's method, however, the inquiry should not be aimed at the "exhaustive search for cosmic understanding but for the particularized resolution of legal disputes." *Daubert*, 509 U.S. at 597. It is the specific relationship between an expert's method, the proffered conclusions, and the particular factual circumstances of the dispute that renders testimony both reliable and relevant.

In addition to the expert having appropriate qualifications and methods, the proponent of the expert's opinions must demonstrate that the process by which the expert derived his or her opinions is reliable. *United States v. Crabbe*, 556 F. Supp. 2d

1217, 1220 (D. Colo. 2008). When assessing reliability, "the court may consider several nondispositive factors: (1) whether the proffered theory can and has been tested; (2) whether the theory has been subject to peer review; (3) the known or potential rate of error; and (4) the general acceptance of a methodology in the relevant scientific community." *103 Investors I*, 470 F.3d at 990 (citing *Daubert*, 509 U.S. at 593-94). These considerations are not exhaustive. Rather, "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Ultimately, the test requires that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id*.

While plaintiff, as the proponent of the challenged testimony has the burden of establishing admissibility, the proffer is tested against the standard of reliability, not correctness; she need only prove that "the witness has sufficient expertise to choose and apply a methodology, that the methodology applied was reliable, that sufficient facts and data as required by the methodology were used and that the methodology was otherwise reliably applied." *Crabbe*, 556 F. Supp. 2d at 1221.

In sum, assuming an objection is properly made, expert testimony must be excluded if the expert is unqualified to render an opinion of the type proffered, if the opinion is unreliable, if the opinion will not assist the trier of fact, or if the opinion is irrelevant to a material issue in the case.

**III. ANALYSIS**

Defendants' motion seeks to "exclude Mr. Berry's opinions in their entirety," Docket No. 104 at 9, which is a sign that defendants did not review the Court's Practice Standards before filing the instant motion. Practice Standard III.G concerns motions to exclude expert testimony. *See* Practice Standards (Civil Cases), Judge Philip A. Brimmer, § III.G. It requires that a Rule 702 motion "shall identify with specificity each **opinion** the moving party seeks to exclude" (emphasis in original). As the court explained in *Crabbe*, "the Rule 702 determination [is] more *opinion-centric* than *expert-centric*." 556 F. Supp. 2d at 1221.

Therefore, the initial question is whether defendants' motion should be stricken for failure to comply with the Practice Standard. The purpose of the Practice Standard is to focus the analysis on specific opinions. Defendants' motion summarizes Mr. Berry's reports as providing three opinions. Docket No. 104 at 2. This is imprecise because defendants do not challenge the opinions as they appear in Mr. Berry's reports, but instead challenge–with scarce citations–Mr. Berry's opinions as they are summarized in defendants' motion. Accordingly, the Court will focus narrowly on whether Mr. Berry may offer opinions on the three specific matters identified in defendants' motion, namely, (1) that the Deere Model 4600 compact utility tractor and Model 460 loader violated particular industry standards; (2) that the Deere Model 4600 compact utility tractor and Model 460 loader should have been designed differently; and (3) that the hay bale fell back over the pallet fork, and not to the left side of the pallet fork as proposed by defendants' expert, Dr. Cargill. Docket No. 104 at 7.

Plaintiff does not substantively address defendants' arguments in her response,

and instead focuses almost exclusively on attacking the opinions of defendants' expert, Dr. Cargill. See Docket No. 119.[1] To support plaintiff's position regarding the applicability of the contested industry standards, plaintiff attaches an unsigned declaration of Mr. Berry, dated July 13, 2015. Docket No. 119-1. Defendants argue that the Court should ignore this declaration because it is unsworn in violation of 18 U.S.C. § 1746 and is also unsigned. Docket No. 131 at 2. In support of their § 1746 argument, defendants cite cases ruling on summary judgment motions. See, e.g., Massari v. Potter, No. 04-cv-02306-EWN-MJW, 2006 WL 318658, at *5 n. 9 (D. Colo. Feb. 9, 2006); Leathers v. Leathers, 2013 WL 1873275, at *3 (D. Kan. May 3, 2013). Defendants, however, do not argue that plaintiff was required to file a declaration or other form of sworn testimony from Mr. Berry in opposition to defendants' motion to exclude him. Thus, defendants' § 1746 argument is inapplicable to these circumstances. However, Mr. Berry's declaration is also unsigned. Fed. R. Civ. P. 26(a)(2)(B) requires that the disclosure of an expert trial witness must be accompanied by a signed written report. Mr. Berry has submitted two signed written reports that are attached to his unsigned declaration. See Docket Nos. 119-3 and 119-4. Arguably, Rule 26(a)(2)(B) does not apply to an expert report filed in opposition to a Rule 702 motion to exclude testimony. There is a reason, nevertheless, for an expert witness to sign a report. His or her signature evidences the expert's adoption of the

---

[1] In her response, plaintiff asserts that Mr. Berry only references industry standards as best practices and does not opine that the Deere Model 4600 compact utility tractor and Model 460 loader violated industry standards, while Mr. Berry's report clearly contains a "Violation of Standards" section that states: "With the design of the model 4600 tractor and 460 loader John Deere violated several standards of the ASABE, ANSI and ASAE. . . ." See Docket No. 119 at 2; Docket No. 81-1 at 14.

facts and opinions stated therein.  A signature also reflects that the report is not simply a draft of a report or a report that the proponent's attorneys put together, but for which they did not have time to obtain a signature.  The context of Mr. Berry's declaration is significant as well.  The defendants' motion to exclude Mr. Berry's testimony pursuant to Rule 702 requires a pretrial ruling.  This is not a situation where an alleged disclosure violation may be cured at trial by having the expert testify under oath.  Finally, plaintiff made no attempt in the nearly seven months since the declaration was prepared to supplement the record with a signed declaration.  Thus, while the Court considers the signed Berry reports attached to the declaration, the Court will not consider the declaration itself.

### A.  Violation of Industry Standards

Defendants argue that Mr. Berry applies four inapplicable standards to the Model 4600 tractor and Model 460 loader: (1) SAEJ333a; (2) ASAE S583; (3) ASAE S355.3 paragraph 3.1; and (4) ANSI/ASAE S493.  Docket No. 104 at 4.  Defendants state that Mr. Berry's application of irrelevant standards renders unreliable his opinion that the Model 4600 tractor and Model 460 loader violated the aforementioned industry standards.  *Id*. at 3.

Defendants attach Kirk Ney's expert report in which he opines that the aforementioned standards are inapplicable.  Docket No. 104-1 at 12-14.  Mr. Ney asserts that SAEJ333a is inapplicable because it was cancelled as a standard in 1978, twenty-two years before the Model 4600 tractor was manufactured.  *Id* at 13.  Mr. Ney states that ASAE S583 is inapplicable because it was published in 2005–three years

after the Model 4600 tractor and Model 460 loader were sold to plaintiff. *Id*. Mr. Ney contends that ASAE S355.3 paragraph 3.1 is the incorrect standard version, and that the correct version is ASAE S355.2, with which the Model 4600 tractor and Model 460 loader are in full compliance. *Id*. Mr. Ney asserts that ANSI/ASAE S493 does not apply to the Falling Object Protective System ("FOPS") on a tractor or to loads coming off of a loader, and that ANSI/ASAE S493 applies to "guarding against things such as moving traction elements, revolving engine components, nip points, outside faces of pulleys, sheaves, sprockets and gears as well as rotating shafts, universal joints, and other revolving parts with projections such as exposed bolts, keys, pins or set screws." *Id*. at 14.

Plaintiff does not dispute or address any of these arguments in her response. However, Mr. Berry does briefly address Mr. Ney's critiques in his May 21, 2015 report. Regarding SAE J333a, Mr. Berry states that "the SAE standards are ones referenced and incorporated by OSHA into their regulations with respect to ROPS[2] and falling object protection. The standards are still applicable with respect to designing ROPS and FOPS for industrial and agricultural tractors." Docket No. 93-3 at 3. Mr. Berry does not dispute Mr. Ney's assertion that SAE J333a was cancelled in 1978, but appears to argue that cancelled standards are relevant to a manufacturer's design decisions. *Id*. Whether or not a cancelled standard factors into a manufacturer's design process, the Court does not find that a manufacturer violates an industry standard if that standard is no longer in effect. Regarding ANSI/ASAE S493, Mr. Berry states that Mr. Ney is

---

[2]Rollover Protection Structure.

incorrect that ANSI/ASAE S493 does not apply because a FOPS is a guard and the guarding referenced by this standard would apply to a FOPS. Docket No. 93-3 at 4. In a declaration attached to the instant motion, Mr. Ney provides tables from ANSI/ASAE S493 showing the type of guarding contemplated by this standard. Docket No. 104-1 at 14. The Court notes that the cited tables discuss the size of limbs, specifically, finger tips, fingers, hands, and arms, the size of apertures, and the safety distance to hazards. *Id*. at 14-15. In light of these tables provided by Mr. Ney, ANSI/ASAE S493 does not appear to the Court to relate to protection from falling objects, as argued by Mr. Berry, and seems to support Mr. Ney's position regarding its applicability to guarding the operator from a hazard at a known distance from the operator. Mr. Berry's May 21, 2015 report does not address Mr. Ney's arguments regarding ASAE S583 or ASAE S355.3 paragraph 3.1. Mr. Berry's April 16, 2015 expert report states that ASAE S583 was published in 2005, which supports Mr. Ney's argument that it does not apply because it was published after the Model 4600 tractor and Model 460 loader were sold to plaintiff. Docket No. 81-1 at 14. Mr. Berry's April 16, 2015 expert report asserts ASAE S355.3 paragraph 3.1 as the correct standard, but nothing in the record rebuts Mr. Ney's challenge to its applicability. Plaintiff bears the burden of establishing the admissibility of her expert's opinions. *See Crabbe*, 556 F. Supp. 2d at 1221.

An expert's failure to take into account the relevant industry standards weighs against the reliability of that expert's opinion. *See Heer v. Costco Wholesale Corp.*, 589 F. App'x 854, 862 (10th Cir. 2014) (unpublished). The Court considers Mr. Ney's arguments persuasive. The Court finds that plaintiff has not carried her burden of showing the reliability of Mr. Berry's opinion regarding whether the tractor and loader

violated certain industry standards. Accordingly, Mr. Berry may not testify that the Model 4600 Tractor and Model 460 Loader violated SAEJ333a, ASAE S583, ASAE S355.3 paragraph 3.1, and ANSI/ASAE S493.

### B. Alternative Designs

Defendants challenge two of Mr. Berry's opinions regarding alternative designs: (1) the Model 4600 tractor should have had other safety devices, in particular, a self-leveling device to maintain a level position of the pallet fork tine attachment and a four-post FOPS; and (2) the Model 4600 tractor should not have been designed such that, when the loader is at a maximum height, the pallet fork tines could be rotated fully rearward. Docket No. 104 at 6.

Defendants argue that these opinions do not fit this case because they are not tied to the facts of this accident. *Id*. Defendants assert that there are two undisputed facts that are inconsistent with Mr. Berry's opinion–that the pallet fork tines were level, not rotated rearward, at the time of the accident, and that the pallet forks were raised to eight feet, not the loader's maximum height of nine feet, four inches. *Id*. Based on these facts and the opinion of their expert, Dr. Cargill, defendants argue that the hay bale could not have fallen backwards onto Ms. White.

In its January 28, 2016 order denying defendants' motion for summary judgment, the Court found genuine disputes of material facts surrounding the circumstances of this accident. *See* Docket No. 178 at 11. For instance, Tim Dinkel, who saw the tractor shortly after the accident, said that the pallet fork tines were at a 45-degree angle, Docket No. 108-10 at 4 (Dinkel Depo., at 68:7-14), which is inconsistent with Ms.

White's testimony that she kept the pallet fork tines level. In light of the factual disputes as to how the hay bale fell and injured Ms. White, the Court cannot conclude that Mr. Berry's opinions relate to an accident that did not occur. Moreover, defendants do not address whether the alternative designs proposed by Mr. Berry would have prevented Ms. White's injuries. Accordingly, the Court finds that Mr. Berry's alternative design opinions fit this case sufficiently to avoid their preclusion.

### C.  Accident Reconstruction

Defendants argue that Mr. Berry should not be permitted to offer an accident reconstruction opinion because no such opinion appears in his April 16, 2015 expert report and that he only opines on how the accident occurred in his rebuttal of Dr. Cargill's accident reconstruction. Docket No. 104 at 8. Defendants further argue that Mr. Berry does not provide any analysis to support his accident reconstruction opinion. Docket No. 104 at 8. Plaintiff does not address these arguments in her response. *See* Docket No. 119.

Mr. Berry does not provide an accident reconstruction opinion in his April 16, 2015 expert report. A party's failure to comply with the disclosure requirements of Fed. R. Civ. P. 26(a) subjects it to the sanctions identified in Fed. R. Civ. P. 37(c)(1). Pursuant to Rule 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to *use that information* or witness to supply evidence. . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). (emphasis added). Defendants, however, do not mention Rule 26(a) or claim that Mr. Berry's alternative causation theories should be excluded for some reason other than a Rule 702 violation. As a result, the Court does

not consider whether there was a disclosure violation.

In his unsigned July 13, 2015 declaration, Mr. Berry provides two theories for how the accident occurred, but does not offer any analysis to support his opinions.[3] Docket No. 119-1 at 11. As noted above, the Court will not consider this unsigned declaration. However, even if the Court did consider Mr. Berry's alternative causation theories as stated in the declaration, it is inadmissible under Rule 702. "Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Joiner*, 522 U.S. at 146; *Goebel v. Denver and Rio Grande Western R.R. Co.*, 346 F.3d 987, 1003 (10th Cir. 2003) ("[O]nce the trial court was alerted to the potential gap in [the expert's] chain of reasoning, it should not have admitted the expert's opinion into evidence unless the record before the court–other than a bald *ipse dixit* from the expert–filled that gap") (internal citation omitted). Because Mr. Berry does not offer an explanation to support his alternative accident reconstruction theories, under Rule 702 they are not admissible.

## IV. CONCLUSION

For the foregoing reasons it is

**ORDERED** that defendants' Motion to Exclude the Testimony of Thomas Berry [Docket No. 104] is **GRANTED** in part and **DENIED** in part. Pursuant to Rule 702, Mr. Berry may not testify that the Deere Model 4600 tractor and 460 loader violated

---

[3] Plaintiff attaches the same declaration to two responses, the summary judgment response and the response to the instant motion. Docket No. 119-1; Docket No. 123-9.

SAEJ333a, ASAE S583, ASAE S355.3 paragraph 3.1, and ANSI/ASAE S493, and he may not, other than criticizing Dr. Cargill's opinion as disclosed, offer an opinion on what caused the hay bale to fall on Ms. White based on Ms. White's description of the incident.

DATED February 8, 2016.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge